UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA L. HUTCHINSON,                          Case No. 12-11337

                    Plaintiff,                  Stephen J. Murphy, III
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 24)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On March 23, 2012, plaintiff Jessica L. Hutchinson filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Stephen J. Murphy, III referred this matter to Magistrate

Judge R. Steven Whalen for the purpose of reviewing the Commissioner's decision

denying plaintiff's claim for supplemental security income benefits.  (Dkt. 5).  On

November 12, 2012, this matter was reassigned to the undersigned.  (Dkt. 19).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14,

24).

### B.   Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income benefits on November 3, 2008, alleging that she became disabled beginning September 15, 1994. (Dkt. 10-5, Pg ID 141-43).[1] The claim was initially disapproved by the Commissioner on March 18, 2009. (Dkt. 10-3, Pg ID 96-97). Plaintiff requested a hearing and on April 20, 2010, plaintiff appeared with a non-attorney representative before Administrative Law Judge ("ALJ") Ethel Revels, who considered the case de novo. (Dkt. 10-2, Pg ID 45-94). In a decision dated September 22, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 10-2, Pg ID 30-41). Plaintiff requested a review of this decision on October 4, 2010. (Dkt. 10-4, Pg ID 133-34). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[2] the Appeals Council, on January 18, 2012, denied plaintiff's request for review. (Dkt. 10-2, Pg ID 24-26); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Soc. Sec. Admin.*, 100 Fed. Appx. 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, December 2008 is plaintiff's earliest possible entitlement to SSI benefits.

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be remanded for further consideration under Sentence Four of 42 U.S.C. § 405g.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1989, and was 19 years of age on the application date and 20 years old at the time of the administrative hearing.  (Dkt. 10-2, Pg ID 35). Plaintiff has a 12th grade education, with special education classes, and no past relevant work history.  (Dkt. 10-2, Pg ID 40; Dkt. 10-6, Pg ID 156).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Dkt. 10-2, Pg ID 35).  At step two, the ALJ found that plaintiff's organic mental disorders and attention deficit disorder (ADD) were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment that met or medically equaled one of the listings in the regulations.  (Dkt. 10-2, Pg ID 35-37).

The ALJ determined that plaintiff has the following residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR
> 416.967(c) except the claimant requires simple,
> repetitive, unskilled work because her mental deficits
> cause moderate limitations in her ability to maintain
> concentration for extended periods and in the ability to
> remember and carry out detailed instructions.  The
> claimant cannot do work that requires reading or
> calculating, including making change/exchanging money.

(Dkt. 8-2, Pg ID 31-34).  At step four, the ALJ found that plaintiff had no past

relevant work.  (Dkt. 10-2, Pg ID 40).  At step five, the ALJ denied plaintiff

benefits because she could perform a significant number of jobs available in the

national economy.  (Dkt. 10-2, Pg ID 40-41).

### B.    Plaintiff's Claims of Error

Plaintiff alleges four claims of error: (1) the ALJ rendered an improper Step

3 determination; (2) the ALJ rendered an improper credibility determination; (3)

the ALJ rendered an improper RFC determination; and (4) the ALJ rendered an

improper Step 5 determination.  Plaintiff first argues that the ALJ improperly

found that plaintiff did not meet Listing 12.05(C), which she asserts requires a

valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or

other mental impairment imposing an additional and significant work-related

limitation of function.  20 C.F.R. § 404, Subpt. P, Appx. 1; 20 C.F.R. § 416.925.

Plaintiff avers that the record evidence shows that her impairments began before

the age of 22.  According to plaintiff, as early as 1997, when she was eight-years-

old, a Test of Auditory-Perceptual Skills found that she had a median language

skill level at the 13th percentile, which was equivalent to a child age three to five. (Dkt. 10-8, Pg ID 216).  A few days later, speech and language pathologist Karen Sabuda, MA, CCC/SLP, opined that plaintiff was "experiencing considerable difficulty in expressive language skills," had poor memory for spoken words, a poor ability to follow instructions, and limited thinking and reasoning skills.  (Dkt. 10-8, Pg ID 218).  By April 2000, Dr. Amy J. Trabitz, Ph.D., concluded that plaintiff's "level of cognitive functioning is significantly lower than the mean for children her age."  (Dkt. 10-7, Pg ID 209).  A September 2007 individual education program ("IEP") team report noted that plaintiff, then 18 years old, had problems with her cognitive process (Dkt. 10-9, Pg ID 349), and Dr. Howard Berlin concluded in April 2008 that plaintiff "has always struggled on tests of cognitive strength," and that combined with her academic achievement and current scores, plaintiff had a "lack of development in the cognitive domain, at or below 2 standard deviations below the mean" and "[i]mpairment in several areas of adaptive behavior."  (Dkt. 10-7, Pg ID 204).  Thus, plaintiff concludes, the record provides substantial evidence that plaintiff suffered from cognitive impairments during her developmental period, satisfying the underlying requirement of Listing 12.05.

Plaintiff further argues that the ALJ inexplicably ignores that the record shows that plaintiff has IQ scores ranging from 67 to 80, thus satisfying the IQ

scores component of the Listing.  Specifically, psychological testing administered when plaintiff was 10 years old revealed that she had a Full Scale IQ of 68 and a Verbal IQ of 67.  (Dkt. 10-7, Pg ID 207).  Then, when plaintiff was 18 years old, psychological testing by Dr. Berlin revealed a Full Scale IQ of 68 and a Performance IQ of 68.  (Dkt. 10-7, Pg ID 203-04).  However, according to plaintiff, the ALJ failed to provide a rational explanation as to why she did not find these IQ scores to be valid in her Listing 12.05(C) analysis, despite giving "significant weight" to Dr. Berlin's report.

Plaintiff also contends that the record reflects the existence of a mental impairment imposing an additional and significant work-related limitation of function.  Namely, contrary to the ALJ's statement that plaintiff's "academic testing by school psychologists found no evidence of an Attention Deficit Disorder," the ALJ herself found that plaintiff "has the severe impairments of organic mental disorders, and *attention deficit disorder*."  (Dkt. 10-2, Pg ID 35, 37).  Plaintiff argues that the record reflects that plaintiff's ADD was diagnosed and prevalent: (1) on March 25, 1998, a multidisciplinary evaluation team summary opined that plaintiff was "somewhat distractible in class;" (2) Dr. Berlin opined on November 11, 1999 that plaintiff had mild to moderate difficulty with inattention depending on the task at hand and the nature of the environment; (3) Dr. Trabitz officially diagnosed plaintiff with ADD in April 2000; and (4) a

6

September 2011 IEP team report acknowledged that plaintiff had been diagnosed with ADD and that she "frequently drifts off tasks." (Dkt. 10-7, Pg ID 201, 209; Dkt. 10-8, Pg ID 241, 268). Further, the ALJ concluded that plaintiff suffered from moderate difficulties in social functioning and maintaining concentration, persistence, or pace (Dkt. 10-2, Pg ID 36), and state-agency reviewer Dr. Rom Kriauciunas, Ph.D., similarly opined in March 2009 that plaintiff had moderate limitations in social functioning and maintaining concentration, persistence, or pace. Therefore, plaintiff concludes, a finding of "severe" for plaintiff's ADD was appropriate, as the ALJ expressly concluded previously at Step 2, and plaintiff thus meets Listing 12.05(C). Plaintiff further contends that her learning disorder is another severe mental impairment that would satisfy Listing 12.05(C). The ALJ admitted that Dr. Hugh Bray, Ph.D., diagnosed plaintiff with a learning disorder, but never explained why the impairment was not severe. Indeed, plaintiff explains, the ALJ found at Step 2 that plaintiff "has the severe impairments of organic mental disorders, and attention deficit disorder." (Dkt. 10-2, Pg ID 35). And, state agency review Dr. Kriauciunas explained that an organic mental disorder encompassed plaintiff's learning disorder. (Dkt. 10-9, Pg ID 392). Further, the ALJ specifically assessed in her RFC finding that plaintiff "cannot do work that requires calculating, including making change/exchanging money," which plaintiff contends is a very significant limitation. Thus, plaintiff concludes that the ALJ

7

erred in not finding that plaintiff met Listing 12.05(C).

Second, plaintiff argues that the ALJ improperly assessed her credibility by relying on irrational reasons to dismiss her credible testimony. According to plaintiff, the ALJ acknowledged the testimonies of plaintiff and her mother, and then merely regurgitated the medical record without analysis. Plaintiff contends that the ALJ's recitation of the medical record actually lends credence to plaintiff's testimony. (Dkt. 10-2, Pg ID 38-39). To the extent the ALJ cited some evidence from the record as showing improvement, plaintiff argues that the ALJ engaged in cherry-picking the record. Plaintiff cited, as an example, the ALJ's finding that in "May of 1998 and March of 1999, the claimant was found not eligible for special education," when the record nevertheless reflects that plaintiff was still having difficulties in school in 1998 and 1999. In 1998, Dr. Berlin opined that plaintiff was continuing "to struggle in many areas in the classroom" despite her speech and language services (Dkt. 10-8, Pg ID 232), and a team report noted that plaintiff "has a lot of difficulty with classroom work, particularly math," that "she does not remember basic facts and operations," that her "[w]ritten language and reading comprehension are also low," and that she was "somewhat distractible in class." (Dkt. 10-8, Pg ID 241). In 1999, Dr. Berlin attempted to send plaintiff back to special education services, noting that she "continues to struggle in all subjects" (Dkt. 10-8, Pg ID 247), and plaintiff's teacher opined that plaintiff was putting

8

"lots of effort into her work w/o much success!!!"  (Dkt. 10-8, Pg ID 255).  And, pursuant to Dr. Trabitz's diagnosis of ADD in May 2000, plaintiff was re-enrolled in the special education program in 2001 and her special education hours increased to 18.75 per week, with only 11.25 general education hours.  (Dkt. 10-8, Pg ID 265).  Plaintiff also states that the ALJ focused on January 2009 Function Reports completed by plaintiff and her mother, which note that plaintiff completes chores, delivers newspapers twice a week, helps to care for pets, uses the computer, watches television, cares for personal hygiene, pays bills with assistance, shops with assistance, reads, participates in Girl Scouts, and socializes with others.  (Dkt. 10-2, Pg ID 39).  Plaintiff argues that the ALJ failed to acknowledge the manner by which plaintiff performed these activities, because plaintiff's mother explained that plaintiff would not do tasks "unless she's told, and you follow through and make sure the tasks have been done," and that plaintiff "needs reassurance and guidance to complete many tasks" because she "[h]as a very low IQ and things are very hard to comprehend" and that she has to be "put 'on task'" often.  (Dkt. 10-2, Pg ID 75-76; Dkt. 10-6, Pg ID 164).  Therefore, plaintiff concludes, the ALJ rendered an improper credibility determination.

Third, plaintiff argues that the ALJ rendered an improper RFC determination because she failed to explain why "significant weight" was given to consultative examiner Dr. Hugh D. Bray's February 2009 medical opinion.  (Dkt. 10-2, Pg ID

9

36).  Plaintiff contends that the ALJ claims that he gave "significant weight" to Dr.

Bray's opinion because he found the report "consistent with the overall record,"

but fails to cite any specific medical records he asserts are "consistent" with Dr.

Bray's opinion, and thus fails in her obligation to build a logical bridge between

the evidence and the result, as required by *Lowery v. Comm'r of Soc. Sec. Admin.*,

55 Fed. Appx. 333, 339 (6th Cir. 2003).  Further, plaintiff argues that the ALJ

failed to note what weight was given to the March 2009 medical opinion of non-

examining State-agency reviewer Dr. Rom Kriauciunas, Ph.D., noting only that

"the undersigned finds that the determination . . . is consistent with the record as a

whole in this case" (Dkt. 10-2, Pg ID 36), but failing to explain why his opinion

was "consistent with the record."

Fourth, plaintiff argues that the ALJ rendered an improper Step 5

determination because plaintiff was represented by a non-attorney representative

and the ALJ failed to adequately develop the record, citing *Lashley v. Sec'y of

Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (an ALJ's "basic

obligation to develop a full and fair record rises to a special duty when an

unrepresented claimant unfamiliar with hearing procedures appeals before him").

Plaintiff complains that the vocational expert ("VE") failed to provide DOT codes

for the positions identified, and therefore plaintiff cannot properly determine

whether a conflict exists between the expert's testimony and the DOT, citing

*Allhouse v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 115804 (E.D. Mich. Dec. 11, 2009).  Plaintiff also complains that the likely positions in the DOT all require a Reasoning Development Level of 2, which is the "commonsense understanding to carry out detailed but uninvolved written or oral instructions," a requirement that contradicts the ALJ's RFC requiring no reading involved.

Plaintiff concludes that the Commissioner's decision should be reversed and remanded for an award of benefits, or, alternatively, remanded for further determination of her disability.

### C.   The Commissioner's Motion for Summary Judgment

The Commissioner argues that plaintiff has not satisfied the criteria of Listing 12.05(C) for mental retardation.  Listing 12.05(C) provides:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for his disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt 404, Subpt P, App. 1, § 12.05(C).  According to the Commissioner, to

11

meet Listing 12.05(C), an individual must establish (1) mental retardation; (2) deficits in adaptive functioning prior to age 22; (3) a valid IQ score between 60 and 70; and (4) another impairment imposing an additional and significant work-related limitation of function. *Id.* The Commissioner contends that plaintiff has not established mental retardation, and that she cannot establish disability with low IQ scores alone. *See* Fed. Reg. 10419, 10423 (2006) ("you must have mental retardation that satisfies the criteria in the introductory paragraph . . . in addition to the criteria in one of the paragraphs that follows"). The ALJ did not find that plaintiff had mental retardation, but instead noted that plaintiff showed a borderline range of functioning. (Dkt. 10-2, Pg ID 37; Dkt. 10-9, Pg ID 384). Courts have recognized the distinction between mental retardation and borderline intellectual functioning. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *Tucker v. Comm'r of Soc. Sec.*, 2008 WL 399573, at *6 (S.D. Ohio. Feb. 12, 2008). According to the Commissioner, the ALJ's finding of an organic mental disorder, not mental retardation, is supported by overwhelming evidence in the record (Dkt. 10-7, Pg ID 209-10; Dkt. 10-9, Pg ID 384, 395), and plaintiff has not identified a single medical source who diagnosed her with mental retardation.

Further, the Commissioner contends that the ALJ reasonably found that plaintiff did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. The Commissioner argues that

plaintiff ignores the requirement that the mental disorder must be separate from and in addition to mental retardation. Plaintiff was never diagnosed with mental retardation and her learning disability and inattentiveness were both interrelated to her intellectual capacity. The ALJ recognized that classroom observations noted that plaintiff's difficulties with inattentiveness stemmed from task complexity, and the school psychologist noted that plaintiff should be considered cognitively impaired. (Dkt. 10-2, Pg ID 39; Dkt. 10-7, Pg ID 199-200, 204). Thus, according to the Commissioner, the ALJ reasonably found that plaintiff did not have a separate mental impairment. The Commissioner further argues that the ALJ properly found that plaintiff's impairments did not cause significant work-related functional limitations, giving significant weight to Dr. Bray's opinion that plaintiff's psychological issues "will not significantly interfere with the ability to do work related activities performing repetitive tasks." (Dkt. 10-2, Pg ID 35).

The Commissioner also argues that the ALJ reasonably assessed plaintiff's credibility by reasonably weighing the medical evidence and finding that plaintiff's allegations were not wholly credible. (Dkt. 10-2, Pg ID 40). According to the Commissioner, the ALJ agreed that plaintiff had significant limitations, but not any more than provided by her residual functional capacity assessment. The ALJ noted that plaintiff's testimony and her activities reported were largely consistent with the ALJ's RFC. The Commissioner explained that plaintiff testified she could read

a newspaper, write checks and balance a checkbook using a calculator, go shopping (although not be herself), clean the bathroom, feed the animals, vacuum, go to the movies with a friend, and clean her room.  (Dkt. 10-2, Pg ID 56-59, 65-66).  Plaintiff further testified that she generally played computer games, the Wii and Nintendo DS (*Id.* at 60), but her mother testified that plaintiff did not do things unless she was told to do so and that she had to follow through to make sure the tasks had been done.  (*Id.* at 75).  The Commissioner thus argues that the ALJ reasonably considered plaintiff's daily activities and how those activities were performed, acknowledging that while plaintiff needed reassurance and guidance to complete tasks, she was able to complete chores, deliver newspapers biweekly, care for pets, use the computer, watch television, care for her personal hygiene, shop and pay bills with assistance, read, participate in Girl Scouts, and socialize with others.  (Dkt. 10-2, Pg ID 40).  And, the Commissioner continues, it was reasonable for the ALJ to find this level of functioning inconsistent with claims of disability.  Further, the objective medical evidence is a "useful indicator" for the ALJ when evaluating plaintiff's credibility.  *See* 20 C.F.R. § 416.929(c)(2).  According to the Commissioner, the ALJ discussed the objective medical evidence as it related to plaintiff's capabilities and reasonably found the objective evidence inconsistent with allegations of disability and inability to function independently.  (Dkt. 10-2, Pg ID 38).  The Commissioner contends that plaintiff failed to produce

14

any treatment or other records demonstrating that she had greater limitations than the ALJ found.  The ALJ noted that multiple professionals, including the school psychologist, a consultative examining psychologist, and a state agency psychologist, found plaintiff capable of work.  (Dkt. 10-2, Pg ID 36, 39-40).  Thus, the Commissioner concludes, while plaintiff may disagree with the ALJ's credibility assessment, she failed to demonstrate a basis for overturning that finding, especially in light of the great deference that an ALJ's credibility finding is entitled to on review.

The Commissioner further argues that the ALJ reasonably determined plaintiff's RFC, stating that the ALJ reasonably discussed and weighed the evidence concerning plaintiff's mental limitations.  The ALJ relied on the opinion of the state agency reviewing psychologist, Dr, Kriauciunas, the consultative examining psychologist, Dr. Bray, and the school psychologist, Dr. Berlin, and, consistent with their opinions, limited plaintiff to simple, repetitive, unskilled work and precluded work that required reading or calculating.  (Dkt. 10-2, Pg ID 37).  In response to plaintiff's argument that the ALJ did not explain why she gave significant weight to Dr. Bray's opinion, the Commissioner argues that plaintiff is "purely nitpicking," and that the ALJ had just finished summarizing and evaluating the medical evidence when she concluded that Dr. Bray's opinion is consistent with the overall record.  (Dkt. 10-2, Pg ID 39-40).  And, in response to plaintiff's

complaint that the ALJ failed to indicate the specific weight given to Dr.
Kriauciunas's opinion, the Commissioner notes that plaintiff fails to cite any
support for her argument that the ALJ must indicate the specific weight given to
the opinion of a physician.  The ALJ noted the opinion was consistent with the
record evidence, suggesting that the opinion merited considerable weight.  And, the
Commissioner concludes, the opinion is consistent with the ALJ's RFC.

Finally, the Commissioner argues that the ALJ reasonably relied on the VE's
testimony.  The VE testified that someone with plaintiff's vocational profile and
RFC could perform a significant number of jobs existing in the national economy,
specifically identifying three jobs: packager (12,000 jobs), sweeper/cleaner (4,100
jobs), and bus person (8,000 jobs).  (Dkt. 10-2, Pg ID 91-92).  The VE further
testified that there was no conflict between her testimony and the Dictionary of
Occupational Titles ("DOT"), and plaintiff's representative did not cross-examine
the VE.  (*Id.*).  The Commissioner argues that the Sixth Circuit explained in
*Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009) that the fact that a
VE's description of a job did not align perfectly with the DOT is not surprising
given that "the DOT contains information about most, but not all, occupations,"
and that the DOT's job classifications are collective descriptions of occupations
that can encompass numerous jobs.  *Id.* at 605.  The court further held that once a
vocational expert testifies that there is not conflict between the expert's testimony

16

and the DOT, the ALJ had no duty to interrogate further concerning the possibility of an inconsistency. *Id.* at 604. The Commissioner further claims that the VE identified the job "sweeper/cleaner," and that the DOT includes an occupation with the title "sweeper-cleaner," Code 389.683-010. And, assuming that plaintiff could only perform work with Reasoning Development Level 1, the sweeper-cleaner position is consistent with plaintiff's RFC. Therefore, the ALJ's decision should stand.

### D.    Plaintiff's Reply Brief

Plaintiff responds that no formal diagnosis of mental retardation is required for plaintiff to meet Listing 12.05(C) because the Listing defines "mental retardation" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period[, before age 22]," and the record establishes plaintiff's subaverage general intellectual functioning. Testing when plaintiff was eight years old found that plaintiff had a median language skill level equivalent to a child aged three to five, and a language pathologist opined that plaintiff was "experiencing considerable difficulty in expressive language skills," had poor memory for spoken words, a poor ability to follow instructions, and limited thinking and reasoning skills. (Dkt. 10-7, Pg ID 216, 218). Dr. Trabitz concluded that ten-year-old plaintiff's "level of cognitive functioning is significantly lower than the mean for children her age"

17

(Dkt. 10-7, Pg ID 209), and Dr. Berlin determined that 18-year-old plaintiff "struggle[s] on tests of cognitive strength" and that combined with her academic achievement and current scores, plaintiff had a "lack of development in the cognitive domain, at or below 2 standard deviations below the mean" and "[i]mpairment in several areas of adaptive behavior." (Dkt. 10-7, Pg ID 204). Thus, plaintiff argues she met the criteria of the introductory paragraph before age 22. And, the record reflects IQ scores between 60 and 70, and the existence of a mental impairment imposing an additional and significant work-related limitation of function. Plaintiff avers that she suffers from attention deficit disorder and a learning disorder in math, and that these severe impairments incur a significant work-related limitation of function. Plaintiff asserts courts have considered both of these disorders a separate impairment under a 12.05(C) analysis. (Dkt. 27, Pg ID 533 (collecting cases)). Plaintiff further contends that, contrary to the Commissioner's assertions in his brief, the ALJ did not in fact rely on the consultative examiner and state agency reviewing psychologists' opinions in finding that the disorders did not incur significant work-related limitations. Plaintiff claims that the ALJ instead only reasoned that "[t]he record shows further that the claimant does not have a physical or other mental impairment that imposes a significant work-related limitation of function." (Dkt. 10-2, Pg ID 37). Plaintiff argues that the conditions levied significant limitations. Plaintiff exhibited

distractibility in class, mild to moderate difficulty with inattention, and "frequently drift[ed] off tasks" due to the attention deficit disorder. (Dkt. 10-7, Pg ID 201; Dkt. 10-8, Pg ID 241, 268). Plaintiff further contends that the ALJ recognized plaintiff's learning disorder as "severe" when she found that plaintiff "cannot do work that requires calculating, including making change/exchanging money." (Dkt. 10-2, Pg ID 37).

Plaintiff also argues in response that the ALJ rendered an improper credibility determination by regurgitating the medical history without analysis and failing to consider the actual manner in which plaintiff's daily activities were actually performed. Plaintiff asserts that contrary to the Commissioner's arguments, the ALJ did not note in her decision "that plaintiff needed reassurance and guidance to complete tasks" and did not "remark[] that it was unclear whether Plaintiff performed certain tasks with her mother's oversight." Rather, plaintiff claims, these statements came from the hearing testimony.

Plaintiff further argues that the ALJ rendered an improper RFC decision by failing to explain why he gave "significant weight" to the consultative examiner, Dr. Bray, and by failing to explain what weight was given to the non-examining State-agency reviewer, Dr. Kriauciunas. Plaintiff contends that the ALJ must build an accurate and logical bridge between the evidence and the result, and no such "path of reasoning"exists without reference to the medical evidence.

Finally, plaintiff argues that the ALJ's Step 5 determination is flawed because the ALJ failed to adequately develop the record and ask for DOT codes. According to plaintiff, there is a conflict between the DOT and the posited positions in the level of reasoning development required. While the sweeper/cleaner position admittedly requires only Reasoning Development Level of 1, it also requires Mathematical Development of 1 (adding and subtracting two-digit numbers, multiply and dividing by 10s and 100s by 2, 3, 4, and 5, and performing the four basis arithmetic operations with coins as part of a dollar), which is inconsistent with the ALJ's RFC of no work requiring calculations.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

21

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

　　　　If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

　　　　The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

22

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become

23

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed

> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

25

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    Listing 12.05(C)

Plaintiff argues that the ALJ erred in finding that plaintiff did not meet Listing 12.05C. In the third step of the sequential analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet the requirements of a listed impairment, a plaintiff bears the burden of proof that *all* of a Listing's criteria are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (a claimant's impairment must meet *every element* of a Listing before the Commissioner may conclude that he is disabled at Step III). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at

26

530.

Listing 12.05 provides the criteria used to determine when "mental retardation is severe enough to preclude gainful activity." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). To qualify as disabled under Listing 12.05, a claimant must satisfy both the diagnostic description in the introductory paragraph of the Listing and one of the four sets of criteria found in Subparts A through D. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). Specifically, Listing 12.05(C) requires a claimant to meet three requirements in order to establish a disability: (1) she must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested prior to the age of 22; (2) she must establish that she meets the first requirement of 12.05(C) by showing that she has a valid verbal, performance or full-scale IQ score of 60 through 70; and (3) she must establish that she meets the second requirement of 12.05(C) by showing she has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00A, 12.05, 12.05(C); *Foster*, 279 F.3d at 354. The Sixth Circuit has described the adaptive skills portion of Listing 12.05 as follows:

> The adaptive skills prong evaluates a claimant's
> effectiveness in such areas as social skills,

> communication skills, and daily-living skills. To
> determine the definition of mental retardation under the
> SSA, it is appropriate to consult leading professional
> organizations' definitions. The American Psychiatric
> Association defines adaptive-skills limitations as
> "[c]oncurrent deficits or impairments . . . in at least two
> of the following areas: communication, self-care, home
> living, social/interpersonal skills, use of community
> resources, self-direction, functional academic skills,
> work, leisure, health, and safety."

*Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir. 2009) (internal

citations omitted) (finding plaintiff's adaptive skills were not deficient as she cared

for herself and her husband, cooked, washed clothes, shopped, managed her

finances and used public transportation).

The ALJ here found that plaintiff did not meet the requirements of Listing

12.05(A), (B), (C), or (D).  (Dkt. 10-2, Pg ID 36-37).  Plaintiff only challenges the

ALJ's finding as to paragraph (C).  As to that paragraph, the ALJ found:

> Finally, the "paragraph C" criteria of listing 12.05 are not
> met because the claimant does not have a valid verbal,
> performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an
> additional and significant work-related limitation of
> function.  Claimant's academic testing by school
> psychologists found no evidence of an Attention Deficit
> Disorder, test scores were in the borderline range of
> functioning and claimant was determined to be ineligible
> for special education.  Several months later claimant's
> mother had her tested by a private entity and she was
> diagnosed as having ADD and mild retardation (Exhibit
> 4F).  At the request of the State agency claimant
> underwent a mental status evaluation by consultative
> examiner Hugh Bray, Ph.D.  Dr. Bray diagnosed the

> claimant with a learning disorder (Exhibits 5F).  The
> record shows that the claimant has IQ scores ranging
> from 67 to 80 (Exhibit 1F; 2F; 4F).  The record shows
> further that the claimant does not have a physical or other
> mental impairment that imposes a significant work-
> related limitation of function.

(Dkt. 10-2, Pg ID 37).

First, the ALJ's decision is deficient because she fails to address the first

requirement: whether plaintiff met the diagnostic description in the introductory

paragraph of Listing 12.05.  Without explicitly making the required finding at this

initial stage, the ALJ proceeded to discuss the criteria in paragraphs A, B, C and D.

(*Id*).  Therefore, it is unclear whether the ALJ found that plaintiff met the

requirements of the introductory paragraph.  Plaintiff mentions the ALJ's failure to

consider the introductory paragraph, but then both parties proceed to discuss

evidence relevant to that inquiry.  Although the Commissioner points out that

plaintiff has never been diagnosed with mental retardation, plaintiff presents

evidence that she attended special education classes and participated in an

individualized education program throughout the majority of her school years, and

that school psychologists opined that plaintiff's level of cognitive functioning is

significantly lower than the mean for children her age and that she had an

"[i]mpairment in several areas of adaptive behavior."  However, the undersigned

cannot assess whether a finding that plaintiff does not meet the introductory

paragraph is supported by substantial evidence because there is no finding by the

29

ALJ on this issue.  *See Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006)

("[W]e can only review ALJ decisions that make specific findings on the facts of

the case.").  "Though the Commissioner's arguments that [plaintiff] does not

satisfy the threshold requirement of Listing 12.05 are not entirely unpersuasive,

counsel's argument cannot cure a deficient opinion by offering explanations never

offered by the ALJ" because "'arguments [crafted by defense counsel] are of no

consequence, as it is the opinion given by the [ALJ] rather than counsel's 'post hoc

rationale' that is under the Court's consideration.'"  *Oddo v. Astrue*, 2012 WL

7017622, at *6 (N.D. Ohio Dec. 10, 2012) (remanding decision of the

Commissioner because the ALJ failed to conduct a complete 12.05(C) analysis),

*adopted by* 2013 WL 486276 (N.D. Ohio Feb. 6, 2013).  Because it is unclear

whether the ALJ conducted the analysis required in the initial step, the case must

be remanded for further consideration.  *Peck*, 214 Fed. Appx. at 736 ("If [the

claimant] does not meet the capsule definition [in the introductory paragraph], then

the ALJ must make that determination in the first instance.").

    The undersigned further finds that the ALJ's analysis as to the second prong

of the paragraph C criteria is in error.  That prong requires that the claimant

demonstrate "a physical or other mental impairment imposing an additional and

significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App.

1 § 12.05(C).  The additional impairment required at this stage of the analysis

30

"need not be disabling in and of itself," *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985), but the Social Security regulations explain that it must be "a 'severe' impairment [], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). Based on this regulation, an impairment that is deemed "severe" under 20 C.F.R. § 416.920(c) necessarily constitutes a significant additional limitation. *See Oddo*, 2012 WL 7018622, at *5. Therefore, this prong of the paragraph C criteria is met if the ALJ finds, at Step 2 of the sequential disability analysis, that the claimant suffers from a severe physical or mental impairment that is distinct from the claimant's low IQ. *See Timmons v. Astrue*, 360 Fed. Appx. 984, 987 (10th Cir. 2010) ("[A] '§ 12.05C limitation is significant if the claimant suffers from a severe physical . . . impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function.'") (citation omitted); *Schuler v. Astrue*, 2010 WL 1443892, at *5 (C.D. Cal. Apr. 7, 2010) ("[B]ased on the ALJ's own findings, it appears that plaintiff's impairments satisfy the second prong of § 12.05(C) of the Listing because he has a severe mental impairment–*i.e.*, severe major depressive disorder–that is distinct from his qualifying IQ score.").

In this case, the ALJ found at Step 2 of the sequential analysis that plaintiff suffered from two mental impairments (attention deficit disorder and organic mental disorders) which are "severe," as defined in 20 C.F.R. § 416.920(c), but

31

then inexplicably found that these impairments did not impose a significant work-related limitation of function.  (Dkt. 10-2, Pg ID 35).  Based on these findings, it is evident that the ALJ applied an improper legal standard when he determined that plaintiff "does not have a physical or other mental impairment that imposes a significant work-related limitation of function."  (Dkt. 10-2, Pg ID 37).  The undersigned does recognize that in the Sixth Circuit even a *de minimis* impact on a claimant's ability to perform basic work activities requires a finding that an impairment is "severe."  *See Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).  Thus, assuming *arguendo* that finding an impairment is "severe" at Step 2 does not mandate a *per se* finding that such an impairment imposes a significant work related limitation, under Listing 12.05(C), the ALJ should, at least, discuss the distinction between the two.  Here, the ALJ accommodated what appear to be significant work-related limitations by finding plaintiff could only perform "simple, repetitive, unskilled work because her mental deficits cause moderate limitations in her ability to maintain concentration for extended period and in the ability to remember and carry out detailed instructions" and prohibited plaintiff from work "that requires reading or calculating, including making change/exchanging money."  (Dkt. 10-2, Pg ID 37).  The ALJ made no attempt to explain why these work-related limitations would not be necessitated by one of plaintiff's impairments found to be severe at Step 2.  Accordingly, the

32

ALJ's decision finding that plaintiff did not meet Listing 12.05(C) is not supported by substantial evidence. *See Oddo*, 2012 WL 7017622, at *5 (since the ALJ already found other impairments to be "severe" at Step 2, the ALJ's subsequent finding–that plaintiff did not suffer from other physical or mental impairment imposing an additional and significant work related function–is not supported by substantial evidence); *see also Breitenstein v. Astrue*, 2011 WL 1235018 (S.D. Ohio Jan. 6, 2011) (finding that because the ALJ's decision itself acknowledges the existence of additional severe impairments–stuttering and depression/anxiety–these findings satisfy Listing 12.05(C)'s requirement of an "additional and significant work-related limitation of function"), *adopted by* 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011).  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can assess whether the evidence provided by plaintiff was sufficient to satisfy the requirement of deficits in adaptive functioning initially manifested before age 22, and to assess whether plaintiff's physical or other mental impairments impose significant limitations.  In addition, given these conclusions, plaintiff's credibility will necessarily require re-evaluation in full.

### 2.     Plaintiff's remaining arguments

Because this case is being remanded for the reasons set forth above, there is no need to fully discuss plaintiff's remaining arguments.  Even so, because the issues plaintiff raises are likely to arise on remand, the undersigned addresses them

briefly.

### a.    The ALJ's RFC assessment

Plaintiff argues that the ALJ's RFC was improper for two reasons: (1) she failed to explain why she gave "significant weight" to the opinion of the consultative examiner, Dr. Bray; and (2) she failed to explain what weight was given to the non-examining State-agency reviewer Dr. Kriauciunas.  (Dkt. 10-2, Pg ID 36, 40).  In formulating the RFC, the ALJ considered the evidence concerning plaintiff's limitations, including the testimony of plaintiff and her mother, plaintiff's education records, the opinion of the school psychologist, Dr. Howard Berlin, the consultative examining psychologist, Dr. Bray, and the State-agency reviewing psychologist, Dr. Kriauciunas.  No treating physician rendered an opinion regarding plaintiff's functional limitations, and the ALJ expressly found, upon review of the reports in the record, that the conclusions in the reports prepared by Drs. Berlin and Bray were consistent with the overall record regarding plaintiff's functional abilities, and thus assigned those reports significant weight. The ALJ similarly found that the report completed by Dr. Kriauciunas was consistent with the record as a whole in this case.  (Dkt. 10-2, Pg ID 36-40). Plaintiff does not argue that the ALJ was unjustified in giving weight to the opinions of Drs. Bray and Kriauciunas, only that she failed to properly articulate her reasons for assigning them the weight she did.  However, as Drs. Bray and

Kriauciunas were not treating sources, the ALJ had no heightened articulation requirement as to their opinions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[E]ven if the purpose of the reasons-giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to give reasons for only *treating* sources."); *Franklin v. Comm'r of Soc. Sec.*, 2013 WL 943456, at *8 (E.D. Mich. Jan. 18, 2013) ("Moreover, Dr. Clune was not a treating source, and the ALJ therefore had no heightened articulation requirement as to her opinion."), *adopted by* 2013 WL 943538 (E.D. Mich. Mar. 11, 2013). The undersigned finds, reading the ALJ's decision as a whole, that the ALJ reasonably considered and discussed the record evidence, and reviewed and weighed the medical opinions of the examining and consulting physicians concerning plaintiff's mental limitations, and plaintiff's claim of error should be denied. *See* 20 C.F.R. § 404.1527.

### b.    VE testimony

Finally, plaintiff argues that the ALJ erred at Step 5 of the sequential evaluation because she did not ask the VE to provide DOT codes for the identified jobs. Plaintiff claims that this prevents her from determining whether there are any conflicts between the DOT and the VE's testimony. However, that same argument has already been considered and rejected by a court in this district. In *Wilson v. Commissioner of Social Security*, 2011 WL 2607098 (E.D. Mich. July 1, 2011), the

35

plaintiff argued that the ALJ erred in the step five analysis because the VE failed to provide the numeric codes associated with the positions identified as available to the hypothetical person, and two of the occupations identified, bench assembler and plastics sorter, conflicted with the DOT in that the DOT states that both are light rather than sedentary work and that plastics sorter is semi-skilled work rather than light. *Id.* at *6. The Court, Judge Avern Cohn, recognized that the Sixth Circuit has held that "[an] ALJ and [VE] are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT] classifications." *Id.* (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant)). The court concluded that "[e]ven with the inconsistencies and the failure to provide the DOT codes, the ALJ was within her rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT." *Id.* Thus, "an ALJ 'may rely on the testimony of [a VE] even if it is inconsistent with the job description set forth in the [DOT].'" *Id.* (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)).

The Sixth Circuit has explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms

36

used in the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not establish that they do no exist." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009); *see also* SSR 00-4p ("The DOT contains information about most, but not all, occupations."). "[N]either the DOT or [the VE's testimony] automatically trumps when there is a conflict." *Wright*, 321 F.3d at 616; SSR 00-4p. Thus, the fact that the job titles to which the VE testifies does not line up perfectly with the DOT does not render the VE's testimony inconsistent with the DOT as a whole. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *see also Beinlich*, 345 Fed. Appx. at 168 (just because a VE's testimony concerning the existence of specified jobs is contrary to the precise description listed in the DOT "does not establish that [the jobs] do not exist.").

The ALJ here did all that was required by Social Security regulations by inquiring about conflict. (Dkt. 10-2, Pg ID 92). Only if the VE testifies that there is a conflict must the ALJ "obtain a reasonable explanation for . . . [the] apparent conflict." *Lindsley*, 560 F.3d at 603. Further, the ALJ afforded plaintiff's representative an opportunity to cross-examine the VE, and the representative declined to do so. (Dkt. 10-2, Pg ID 92). Thus, once the VE credibly testified that there was no conflict between her testimony and the DOT, and plaintiff was afforded a full opportunity to cross-examine, the ALJ had no duty to interrogate

37

the VE further.  *See Lindsley*, 560 F.3d at 603.  To the extent plaintiff seeks to point out any discrepancy now, it is not grounds for remand because the ALJ satisfied her legal duty to inquire about conflicts at the time of the hearing, and plaintiff failed to point out the alleged conflict at the administrative level.  Thus, this claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be remanded under Sentence Four of 42 U.S.C. § 405g.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 2, 2013                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 2, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>William W. Watkinson, Jr., Frederick J. Daley, Jr., Thresa M. Urbanic, AUSA, and Meghan O'Callaghan, Social Security Administration</u>.

s/Tammy Hallwood          <br>
Case Manager<br>
(810) 341-7887<br>
tammy_hallwood@mied.uscourts.gov